The LAND-O-NOD COMPANY,
Plaintiff,

v.

BASSETT FURNITURE INDUSTRIES,
INC. and The E.B. Malone
Corporation, Defendants.

No. Civ. 4–82–536.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 22, 1982.

Allen I. Saeks, Minneapolis, Minn., for plaintiff.

Douglas J. Williams, Minneapolis, Minn., David B. Lytle, Washington, D.C., for defendants.

MEMORANDUM OPINION AND ORDER

MILES W. LORD, Chief Judge.

## I. PROCEDURAL HISTORY

This matter comes before the Court on the motion of defendant E.B. Malone Company to dismiss plaintiff's complaint, which alleges trademark infringement on the part of both defendants. Jurisdiction vests in this Court under 28 U.S.C. § 1332 and 28 U.S.C. § 1338. Defendant Malone's motion to dismiss is based on three grounds:

(1) The Court lacks personal jurisdiction over defendant Malone.

(2) Defendant Malone has not been properly served with process.

(3) Venue is improperly laid under the requirements of 28 U.S.C. § 1391.

Plaintiff initially instituted this action solely against defendant Bassett Furniture Industries, Inc. (hereinafter Bassett). Bassett brought a motion for summary judgment claiming that, because it did not manufacture, market, etc. any mattresses or box springs, or any labels for such articles, it was not properly a defendant in the action. Plaintiff, in response to Bassett's contention that all mattresses, etc. bearing the Bassett name were actually produced by The E.B. Malone Company, (hereinafter Malone), amended its complaint to include Malone as a defendant. Malone has responded with a motion to dismiss on the grounds set forth above.

## II. FACTUAL BACKGROUND

The Land-O-Nod Company, plaintiff herein, is a Minnesota corporation engaged in the manufacture, sale and distribution of mattresses, box springs and related products. In 1964, Land-O-Nod began using the trademark "Chiropractic" to distinguish its products from those of its competitors. In August 1965, registration for this trademark was duly issued to Land-O-Nod by the United States Patent and Trademark Office. In October 1975, plaintiff's right to use "Chiropractic" as its trademark became incontestable as a result of plaintiff having filed an Affidavit of Continuous Use pursuant to 15 U.S.C. § 1065(3).

Defendant Bassett Furniture is a Virginia corporation. Defendant Malone is a Florida corporation and is a wholly-owned subsidiary of Bassett. Bassett, through Malone, is in the business of manufacturing, marketing and selling mattresses and related products under the Bassett name. Malone produces all mattresses and related bedding products bearing the Bassett name.

Plaintiff claims that in or around November 1981, defendants Bassett and Malone began infringing plaintiff's "Chiropractic" trademark by utilizing a reproduction of said trademark to designate their own product, with such use being alleged by plaintiff to cause confusion on the part of consumers. The word "Chiropractic" has been and is being used by defendants in advertisements of their product, as well as on the identification labels which are affixed to the products themselves.

Defendant Malone's products are distributed nationally. They are sold, for example, under the Bassett name, through the Levitz Furniture chain which has stores throughout the United States, with two stores in Minnesota. Although defendant Malone is not licensed to do business in Minnesota, does not maintain any facilities or bank accounts in this state, and has no employees headquartered here, Malone has been selling bedding products in Minnesota since at least 1972 and Malone sales representatives do call on retailers in Minnesota regarding sales of these mattresses and other bedding products. Malone's reported annual sales in Minnesota in 1981 were in the amount of $151,871.00. For the first six months of 1982, the sales were $42,637.00. Malone claims that it has not sold the actual allegedly infringing product in Minnesota, and that it has not advertised that product in Minnesota. However, the February 1982 issue of "bedding Magazine," a national trade journal which comes into Minnesota, carried an article about the allegedly infringing product. The information for the article was supplied by the Bassett Sales Manager at a trade show in Dallas in January, 1982. At that show, defendant Bassett displayed the allegedly infringing products which had been constructed by defendant Malone. This show was a national marketing trade display aimed at drawing bedding representatives from around the country in order to promote bedding products. Defendant Bassett obviously participated to promote its own products. The Bassett representative contracted, at that trade show, with a dealer from Windom, Minnesota, to supply that dealer with 2 units of the allegedly infringing product. The Minnesota dealer was also supplied with advertising material for that same product.

Defendant Malone argues that this Court has no personal jurisdiction here because the defendant's relationship between the forum and the litigation is only minimal. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97

S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Malone further claims that it has not been properly served with process in this action because the fact that the alleged tort was not committed in whole or in part in Minnesota renders service under Minn.Stat. § 303.13, subd. 1(3) ineffective. Lastly, Malone claims that venue in the District of Minnesota is improper under 28 U.S.C. § 1391(b) because Malone is not "doing business" in Minnesota within the meaning of that statute and because plaintiff's cause of action does not arise here.

## III. LEGAL CONSIDERATIONS

In view of defendant· Malone's contentions, as set forth above, there are three issues to be decided here: (1) Does the Court have personal jurisdiction over defendant Malone; (2) Was service of process on defendant proper; (3) Is venue proper under 28 U.S.C. § 1391.

First, the question of personal jurisdiction will be addressed in conjunction with the question of service. Plaintiff effected service of process upon Malone, a Florida corporation, pursuant to Minn.Stat. § 303.-13, subd. 1(3), by substitute service upon the Minnesota Secretary of State on June 11, 1982. Additionally, personal service was effected upon defendant Malone in Florida by the Sheriff of Polk County, Florida, pursuant to Minn.Stat. § 543.19 on June 14, 1982. Minn.Stat. § 303.13, subd. 1(3), which provides for service of process on a foreign corporation, states, in pertinent part:

> If a foreign corporation makes a contract with a resident of Minnesota *to be performed in whole or in part by either party in Minnesota,* or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corpo-

> ration arising from or growing out of such contract or tort. (Emphasis supplied.)

In serving process under this statutory provision, plaintiff was relying on the fact that a contract was made between defendant Bassett and a Minnesota resident, a Windom, Minnesota, bedding dealer at a bedding trade show in Dallas. Because the bedding units which were the subject of the contract were to have been delivered in Minnesota to that dealer, a Minnesota resident, the contract would have been completed in Minnesota. Defendant claims that the contract was never actually performed, that is, that the bedding units were never actually delivered pursuant to the terms set forth in the contract. According to the affidavit of the Windom dealer, which was submitted by plaintiff as an exhibit, the dealer received no explanation as to why said order has not been forthcoming. Inasmuch as the language of the statute says "to be performed in whole or in part by either party in Minnesota," it is irrelevant that the contract has not *yet* been fully executed. The significant factor is that, by the express terms of the contract, both parties must have understood that it was to have been completed upon the delivery of the mattresses, etc., and the tender of payment for such (the contract having been C.O.D.), with both acts having been intended to take place in Minnesota. Under 15 U.S.C. § 1114, liability for trademark infringement will be assessed against any person who, without the consent of the registrant, shall:

> (1)(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or *advertising of any goods* or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. (Emphasis supplied)

Here, where an article which dealt with details of the alleged infringing product was published in a national trade journal sold in Minnesota and where marketing materials were sent into the state with a Minnesota resident for use in his business,

plaintiff has a compelling argument for claiming that the infringement took place, at least in part, in Minnesota.

■ As indicated above, plaintiff Land-O-Nod relied on the Minnesota long-arm statute for service of process. An examination of the bounds which Minnesota has placed around the reach of its long-arm statutes is appropriate at this time. The posture of the Minnesota Supreme Court has been clearly set forth in a number of opinions on this issue. For example, in *Beck v. Spindler,* 256 Minn. 543, 549–56, 99 N.W.2d 670, 675–79 (1959), a contract case, the Court said that it seemed only fair to permit one who has suffered a wrong at the hands of a resident of a foreign state to sue in his own state. There the Court noted a recent expansion of the scope of permissible jurisdiction of a state court over foreign entities, stating that the trend toward liberality was a continuing one. In *Atkins v. Jones & Laughlin Steel Corp.,* 258 Minn. 571, 104 N.W.2d 888 (1960), the Court reiterated its earlier interpretation of jurisdictional limitations, commenting that the general objective of the Minnesota statute is "to permit a Minnesota citizen injured here by the wrongful act of a foreign corporation to seek recompense therefor in our courts." In *Ehlers v. United States Heating & Cooling Mfg. Corp.,* 267 Minn. 56, 124 N.W.2d 824 (1963), a boiler which had been manufactured outside the state and which had been sold to at least two individuals in two separate transactions outside of the state, exploded after its eventual arrival in Minnesota and caused substantial property damage. The Court held that substituted service was good, stating that in the absence of "specific controlling authority with respect to Federal constitutional limitations . . . it remains our opinion that service upon a foreign corporation in the manner prescribed is effectual to confer jurisdiction in cases such as this." The Court, notably, went on to say, "the product here involved was manufactured by appellant corporation for use by the general public. It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota." In the present case, the defendant contends that, because none of the specifically alleged infringing items have come into Minnesota, service under Minn.Stat. § 303.13, subd. 1(3), was improper. The Court's interpretation of jurisdictional power under the long-arm statute in *Ehlers* militates against defendant's reasoning, and strikes this Court as logically compelling. Application of defendant's theory to these facts dictates that service here would not be proper until the actual infringing object made its appearance in the state, despite defendant's having sent marketing material into Minnesota regarding the infringing product, and having contracted with a Minnesota resident to sell that resident the infringing product. Such trifling can surely not be in keeping with the manifest intent of the legislature in enacting long-arm statutes, and this Court must therefore reject defendant's argument on this point. The Minnesota Supreme Court has made evident that its construction of the propriety of service under Minn.Stat. § 303.13, subd. 1(3), the "single-act" statute, would be liberal. *See, e.g., Brooks v. International Brotherhood of Boilermakers,* 262 Minn. 253, 114 N.W.2d 647 (1962); *Paulos v. Best Securities, Inc.,* 260 Minn. 283, 109 N.W.2d 576 (1961).

In addition to service of process under Minn.Stat. § 303.13, subd. 1(3), plaintiff also effected service on defendant Malone under Minn.Stat. § 543.19, subd. 1, providing for jurisdiction over a foreign corporation which,

(b) transacts any business within the state, or (c) commits any act in Minnesota causing injury or property damage or (d) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found: (1) Minnesota has no substantial interest in providing a forum; or (2) the burden placed on the defendant by being brought under the State's jurisdiction would violate fairness and substantial justice; or (3) the cause of action lies in defamation or privacy.

This statute serves essentially the same purpose as Minn.Stat. § 303.13, subd. 1(3), and has received a similarly liberal construction by the Minnesota Supreme Court, as noted in *Franklin Mfg. v. Union Pacific R. Co.*, 297 Minn. 181, 210 N.W.2d 227 (1973). There, the Court said, "[T]he legislature intended by the enactment of these statutes to extend the personal jurisdiction of this state's courts over nonresident defendants to the maximum limits permitted by due process." 227 Minn. at 183, 210 N.W. at 229.

■ It is a well-accepted principle of law that, with the exception of matters governed by the federal constitution or by acts of Congress, the law which should be applied in any case is the law of the state. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Federal courts must apply state law to cases arising in a state forum except where such law is in violation of the federal constitution or where acts of Congress govern. As a logical corollary to this, federal courts must accept an interpretation by the highest state court of a state's own law. *See Scullin Steel v. National Ry. Utilization Corp.,* 676 F.2d 309 (1982); *Iowa Electric Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1303 (8th Cir.1979), *cert. denied* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). To apply a different interpretation would be to invade rights which have been constitutionally reserved for the states.

The next issue, then, to be appropriately addressed is whether the assertion of jurisdiction by this Court would comport with constitutional requirements of due process. Or, phrased in a slightly different way, the issue is whether the requisites for due process would be met if the defendant herein is compelled to defend in Minnesota.

Although there are an almost overwhelming number of cases which deal with the question of jurisdictional due process, there is no infallible test for determining when due process requirements regarding the assertion of jurisdiction, are satisfied. The United States Supreme Court has displayed an increasingly restrictive tendency in recent cases on this subject. In *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945), for example, the Court emphasized the necessity for "certain minimum contacts" to exist such that maintenance of a suit in a particular jurisdiction would not offend the principles of "fair play and substantial justice." 326 U.S. at 316–19, 66 S.Ct. at 158–59. In *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court emphasized that, in determining whether a defendant should be subjected to jurisdiction in a particular forum, general fairness and the kind and amount of his activities should be determined. This determination, the Court stressed, should take place on a case-by-case basis.

In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court elaborated on the meaning of minimum contacts somewhat by stating that "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." 357 U.S. at 251, 78 S.Ct. at 1238. The term "purposefully" adds a new dimension to due process determination suggesting that the defendant must have taken some positive step to avail himself of some benefit of the forum in order that jurisdiction may properly be asserted against him. In *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court added the restriction that there must be more than just a minimal relationship between the defendant, the forum, and the litigation. 433 U.S. at 204, 97 S.Ct. at 2579. These cases illustrate the court's desire to insure that the due process rights of defendants are afforded maximum protection with regard to jurisdictional assertions.

The Eighth Circuit has decided a number of cases on this federal constitutional question of due process. Its practice appears to be to meticulously scrutinize the totality of contacts between defendant and forum. Traditionally, this scrutiny has yielded a somewhat more narrow construction of

where due process requirements are met than is manifest in decisions of the Minnesota Supreme Court. In *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965), the Eighth Circuit, to make resolution of this type of issue easier, delineated five significant factors which may be examined in making a due process determination. These factors are:

(1) The quantity of the defendant's contacts with the forum state.

(2) The nature and quality of those contacts.

(3) The relationship between the cause of action and those contacts.

(4) The interest of the state in providing a forum for the litigation; and

(5) The convenience of the parties.

The Court emphasized in *Aftanase* that all of these factors need not be present for jurisdiction to be found, and also indicated that the last two factors are of only secondary importance in contrast to the others. *See, e.g., Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 at 31 (8th Cir.1973).

With respect to quantity, in *Aftanase,* the Court gave considerable weight to the length of contact and the amount of business the defendant had done in the forum state. There, the defendant shipped balers into the state, and, while it had not shipped a substantial *number* of balers, its business had been carried on for several years. The defendant derived benefits from the placement of its product in the Minnesota market and received the benefits of the protection of Minnesota law. A Minnesota resident was injured as a direct result of his use of the defendant's product. Although defendant had sold the machine to a middleman and did not know what its final destination would be, defendant had consistently sold machines in Minnesota and so could have reasonably foreseen that the particular baler which caused the damage *might* ultimately be used in Minnesota. Notwithstanding the facts that defendant's contacts with Minnesota were limited in that it was not licensed to do business in Minnesota, that it had never appointed an agent in Minnesota for service of process, that it had no office or warehouse space in Minnesota and that it had never had any employee in Minnesota, the Court found that those contacts which the defendant did have with the state were cumulatively sufficient to satisfy the requirements for due process.

Defendant Malone cites several Eighth Circuit cases, including *Aftanase,* as support for the contention that due process requirements would not be met if Malone were compelled to defend in Minnesota. Three of these cases will be discussed in some detail in order to examine more carefully the standards utilized by the Eighth Circuit in deciding whether jurisdiction is constitutionally permissible.

In *Caesar's World, Inc. v. Spencer Goods, Inc.,* 498 F.2d 1176 (8th Cir.1974), where an Iowa corporation brought suit against a foreign corporation for breach of contract, the Court held that the fact that defendant had no contacts with the state of Iowa for over one year prior to the breach of contract did not render it immune from service of process under Iowa's long-arm statute. In that case, there had been a contractual agreement between the corporate parties which provided that defendant would purchase all the meat necessary to serve its restaurants' requirements from plaintiff. Based on the facts that several of defendant's restaurant franchises were located in Iowa, that defendant was named as an additional insured on all policies insuring those franchised restaurants, and that defendant maintained a substantial amount of control regarding the management of those restaurants, the District Court found that the minimum contacts requirement of the due process clause was satisfied. The Court of Appeals upheld the Order of the District Court, finding that since the defendant had clearly invoked the protection of the Iowa law by reason of its activities there, and since the contract was to have been performed in part in Iowa, the exercise by the Iowa Court of jurisdiction over the defendant was perfectly consistent with the traditional notions of fair play and substantial justice.

In *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211 (8th Cir.1977), the Court affirmed the holding of the lower Court that the contacts which had occurred between defendant and forum state were so minimal as to be insufficient to provide a jurisdictional base under the Nebraska long-arm statute. The Court cited its analysis in a previous case involving the same plaintiff as being the basis for its decision here. In that earlier case, *Aaron Ferer & Sons Co. v. Atlas Scrap Iron,* 558 F.2d 450 (8th Cir.1977), the Court found that there were no sufficient minimum contacts with Nebraska, the forum state, because the contracts at issue were not to be performed in any part in Nebraska, the goods involved did not originate in Nebraska, nor were they destined for Nebraska, the contracts were not negotiated in Nebraska, nor were they executed there, and the defendants employed no salesmen or agents in Nebraska. The only contacts between defendants and plaintiff were a number of telephone calls and letters between plaintiff's office in Omaha and defendants' offices in a number of other states. These contacts alone simply did not rise to what can be called "minimal" for the purposes of asserting jurisdiction. *See Benjamin v. Western Boat Building Corp.,* 472 F.2d 723 (5th Cir.1973).

The third case which this Court will examine is *Toro Company v. Ballas Liquidating Company,* 572 F.2d 1267 (8th Cir.1978). Defendant Malone relied heavily on this case in making its argument for dismissal for want of jurisdiction. In *Toro,* an action was brought by a lawn mower manufacturer and its wholly-owned sales distributor against a Texas corporation, IMA, which assisted manufacturers in the development of markets for their products. IMA had entered into an agreement with defendant Weed Eater (now Ballas Liquidating) to market Weed Eater products. To accomplish this end, IMA hired several distributors throughout the country, and, for the New York area distributions, IMA hired Toro Sales Company, a wholly-owned Toro subsidiary. Toro Sales Company was later terminated. Plaintiff alleged that termination by defendants of its New York subsidiary was part of an illegal conspiracy by defendants to boycott Toro products. In an effort to bring defendants within Minnesota jurisdiction, Toro introduced evidence showing that IMA had conducted activities in Minnesota under its agreement with Weed Eater, Inc. For example, Toro claimed that throughout the terms of that agreement, IMA's regional sales director for the area which included Minnesota would call upon and visit local distributors of Weed Eater products to assist the distributors in their sales efforts. The District Court found that in the one year preceding Toro's lawsuit, approximately $400,000.00 worth of Weed Eater products were sold in Minnesota. The District Court held, based on these facts, that although defendant's activities in Minnesota did fall within the literal provisions of the Minnesota long-arm statute, the maintenance of a suit against defendants in a Minnesota forum would be offensive to the principles of fair play and substantial justice because the connections of the defendants with Minnesota were wholly unrelated to the claim upon which plaintiff was bringing suit. The Eighth Circuit affirmed this decision, citing *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), for the principle that there must be *some relationship* between the defendant's forum activities and the plaintiff's cause of action. The reasoning behind this principle is that, where a corporation has chosen to avail itself of the protection of the law of the forum state for the purpose of obtaining some economic advantage in that state, it must assume the risk that certain of its activities there may result in litigation. Where a corporate entity has realized economic benefits from its activity in the state, it is reasonable for the defendant to be compelled to respond in the courts of that state when the cause of action has arisen out of those activities. In *Toro,* there was absolutely no connection between the plaintiff's claim of unlawful conspiracy to initiate a boycott and the defendants' activities in Minnesota, which involved either developing markets for or selling Weed Eater products. The Weed

**70**

Eater products were not distributed in Minnesota through Toro. Toro acted as a distributor *only* for the New York region. Defendants could not logically have anticipated being compelled to defend in Minnesota against a claim of unlawful conspiracy to initiate a boycott based on their sales and marketing activities in the forum state. There was no basis, then, on the facts set forth in *Toro,* on which jurisdiction could have properly been claimed.

As stated by the United States Supreme Court in *Perkins v. Benguet Consol. Mining Co., supra,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and reiterated by the Eighth Circuit in *Aftanase v. Economy Baler Company,* 343 F.2d 187 (8th Cir.1965), each case must be resolved in light of its own facts, with careful attention to general principles of fairness to all parties. Application of the five factors identified by the Eighth Circuit in *Aftanase* and listed earlier in this opinion will be helpful to this Court in determining what is fair given the instant circumstances in terms of comporting with due process mandates.

The quantity of the defendant's contacts with Minnesota is significant both in terms of their consistency over a period of time (ten years) and in terms of the economic benefit realized by defendant through those transactions. Defendant's contacts with Levitz Furniture exemplifies the quantity of their contacts well. Defendant Malone sells mattresses and other types of bedding products which are manufactured under the Bassett name to the Levitz chain. Two Levitz stores are located in Minnesota. Levitz has carried Bassett products for a substantial period of time as indicated above and does a significant amount of business involving the Bassett line. Although this business may not consist of selling the precise allegedly infringing product, it does involve products that are of essentially the same type as that product and serve the same sort of function.

There is quality in the contacts between defendant Malone and the forum state. Defendant's agents regularly visit its Minnesota clients. Defendant's products are evidently shipped directly into the state by Malone from its facility in Wisconsin. Defendant has purposefully chosen to avail itself of the Minnesota market, and it derives considerable economic advantage from doing so. Again, the products shipped may not include, as of this date, the infringing product, but they are of the same nature. In the February 1982 issue of "bedding Magazine," in the article which described the infringing mattress, defendant Bassett explicitly announced its intent to market the allegedly infringing article "nationally" because of their highly successful reception on the local level. Also, the Bassett Sales Manager at the Dallas trade show sent descriptive materials on the allegedly infringing product into Minnesota with a Minnesota bedding dealer, undoubtedly for the purpose of promoting that product here in Minnesota. These contacts then, like those cited in *Aftanase,* do have a strong element of quality to them. The appearance of the allegedly infringing product in a national trade journal, which was foreseeably destined to be received and reviewed by dealers in Minnesota and which contained illustrative information regarding the claimed infringing product, (which information was supplied by defendant Bassett's agent), adds further to that qualitative element, as does the marketing of that product at the national trade show in Dallas, which Minnesota dealers, among others, had presumably been alerted to attend.

The third factor is the relationship between this cause of action and defendant's contacts. It is undisputed that the defendant does manufacture, market and sell mattresses and bedding products under the Bassett name in Minnesota. The action herein is a trademark infringement action against defendants for allegedly infringing on the trademark "Chiropractic," which trademark is registered to plaintiff and used by plaintiff to designate a particular line of its own bedding products. Plaintiff alleges that the defendant is using this trademark to designate a line of defendant's own bedding products, in express violation of the trademark laws of the United States. Plaintiff contends that defendant has advertised this

product and has sent advertising materials into the forum state with a resident to be used by resident dealer in sales pitches to his Minnesota customers. Since defendant's activities in this state are specifically related to the marketing and sales of bedding products, defendant could certainly have anticipated that his activity in that regard might, at some point in time, result in litigation here. The allegedly infringing product, as mentioned above, is intended to be sold "nationally" around the country and the scope of the observable marketing program carried out by defendant has been national in several respects. The actions on the part of defendant were affirmative economic actions which were surely intended to result in increased sales of the allegedly infringing product. The Court finds these contacts to therefore be directly related to the plaintiff's cause of action herein.

The fourth factor is the interest of the state in providing a forum for the litigation. Plaintiff Land-O-Nod is a Minnesota corporation. Minnesota would logically have an interest in providing a forum in which one of its residents could seek relief against a claimed tortious activity, particularly where a nonresident defendant had benefitted from its purposeful economic activity within the state, and was continuing to do so.

The final factor established by the Eighth Circuit is the convenience to the parties. Although this factor is considered to be of only secondary importance in due process determinations, it can be taken into consideration along with all other attendant factors.[1] Here, plaintiff Land-O-Nod is a Minnesota resident. Defendant Malone is a Florida resident. Defendant Malone markets and sells its products on a large, nationwide scale as indicated clearly in an exhibit which is a page from a furniture industry newsletter delineating the market shares of leading bedding manufacturers in 1980 and 1981. Defendant Bassett was rated ninth in the industry in sales, and did approximately thirty-four (34) million dol-

lars in sales in 1980 and approximately thirty-six (36) million dollars in 1981. Because of this substantial national market, it is not unreasonable that defendant Malone, which manufactures all Bassett products, may be called upon regularly to defend itself against suits in any one of the various states. In addition, defendant Malone's legal counsel is located in Washington, D.C. Because Washington, D.C., is the same approximate distance from Minnesota as it is from Florida, defendant's counsel cannot be said to suffer any greater inconvenience by coming to Minnesota than they would suffer by going to Florida. Thus, it would not appear to this Court that the defendant would be greatly inconvenienced by being required to present itself in this forum for the purpose of defending an action brought against it by a resident. Because plaintiff is a Minnesota corporation and its counsel is located in Minnesota, Minnesota is the most convenient forum for it to bring suit.

Two cases dealing with the question of personal jurisdiction have been decided recently by the Eighth Circuit and should be considered here, to complete this analysis. The first case is *Scullin Steel v. National Ry. Utilization Corp.*, 676 F.2d 309 (8th Cir.1982). There, a Missouri seller sued a nonresident buyer for breach of contract. The Missouri seller, Scullin Steel, went to Pennsylvania, the principal place of business of the defendant, to negotiate a sales contract. The agreement was executed in Pennsylvania. No employee of defendant ever visited Missouri in connection with any activity arising out of or relating to the subject matter of that contract. All contract negotiations were conducted in Pennsylvania. Defendant National Railway Utilization Corp. was not licensed to do business in Missouri, had no office or employees in Missouri and had no agent for service of process. Significantly, there was no indication that defendant had any other contacts with the state of Missouri. Plaintiff Scullin

---

1. The last two factors were considered by the Court to be of only secondary significance. *See, e.g., Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir.1973). In *Aftanase,* the Court dismissed the fifth factor as "carrying little weight either way." 343 F.2d 187, at 197.

had partially performed activities under the contract in Missouri and payment was sent by defendant to plaintiff in Missouri. Also, telephone and mail communication did take place between defendant and plaintiff.

The Eighth Circuit found that the defendant's activities, which consisted, in their totality, of using interstate communication facilities, making payments in the forum state, and providing for delivery in the forum state, were not sufficient to satisfy due process requirements for the Court to assert jurisdiction in Missouri. In *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651 (8th Cir.1982), the Eighth Circuit affirmed dismissal of a complaint for lack of personal jurisdiction. There, the defendant's contacts with the forum state consisted of interstate communication by telephone and by mail service, using parking facilities and railway facilities. The Court stated that the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The Court went on to say, notably, that while the application of the above rule would vary with the quality and nature of the defendant's activity, there must have been some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. There was plainly no activity on the part of defendant which could be construed as achieving this and so no jurisdiction could rightly be found.

Based on all the foregoing factors and on consideration of all arguments presented by the parties to this action, the Court must conclude that the use, in this case, of substituted service on this defendant, a foreign corporation, is totally consistent with the principles of fair play and substantial justice. The basic criterion for determining whether constitutional due process requisites have been met is whether the defendant's contacts with the forum state may be construed, in their totality, as being purposeful, minimal contacts. *See World-Wide Volkswagen Corp. v. Woodson,*

444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court finds that, when considered cumulatively, the total contacts of the defendant with the Minnesota forum are of such purposeful minimal nature as to satisfy all constitutional due process requirements and to properly vest this Court with jurisdiction. The defendant's position as a nonresident seller serves to strengthen the Court's decision in this regard. A distinction between a resident bringing suit against a nonresident seller as opposed to a nonresident buyer has been emphasized by the Minnesota Supreme Court, with that reasoning being followed, in some cases, by the Eighth Circuit. In *Fourth Northwestern National Bank v. Hilson Industries,* 264 Minn. 110, 117 N.W.2d 732 (1962), for example, the Minnesota Supreme Court, in discussing three cases in which it had favored jurisdiction over nonresident defendants, stated that of particular significance was that the affirmance of jurisdiction in these cases:

> all resulted in the protection of individuals damaged in one way or another by nonresident defendants who sold their products in this state or whose products found their way here and caused injury to a Minnesota resident. In each instance the nonresident defendant had been the aggressor, so to speak, and had had substantial contact with the forum, invoking its protection for the privilege of doing business here. It had subjected itself to the reciprocal obligation of amenability to suit in return for the right to compete for sales in our market places.

117 N.W.2d at 735.

*Fourth Northwestern National Bank, supra,* has been cited for the above principle by the Eighth Circuit in *Aftanase* and was again cited in *Electrocraft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365 (8th Cir. 1969), where the Court stated that it felt the above distinction was controlling because "[t]he defendant contracted for a means of payment that might obviate the

necessity of its suing in a Minnesota Court to recover the price, but its right to do so, if necessary, remained." 417 F.2d 365, at 368.

The distinction between nonresident sellers and buyers was given less emphasis in *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d at 1214–15, where the Court stated that the ultimate test was whether the nonresident defendant, acting either as seller or buyer, had performed some act by which it purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. In the instant case, defendants have certainly purposefully availed themselves of the benefit and protection of the laws of the state, as is evident from their sales of bedding products to Minnesota dealers.

■ Further strengthening this Court's determination here is the important principle enunciated in dicta in *B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594 (8th Cir.1973), which stated that defendant's failure to have sold, directly or indirectly, the product which was the subject of the litigation in the forum state because it did not wish the plaintiff to be able to obtain jurisdiction would not enable defendant to defeat jurisdiction. This principle is applicable here, as defendant Malone bases its argument against assertion of jurisdiction largely on the fact that the infringing product was never sold in Minnesota. Defendant Bassett's failure to supply the claimed infringing items to a Minnesota bedding dealer with which defendant Bassett had contracted strikes the Court rather discordantly. Defendant Bassett's contract with the Minnesota bedding dealer has been submitted into evidence. Defendants have never provided the Minnesota dealer with any explanation as to why his order was never filled. While this Court is hesitant to conclude that defendant's failure to comply with its own contract by delivering the alleged infringing product in Minnesota is indicative of its intent to avoid jurisdiction here, the Court cannot allow this result to be achieved merely because the actual claimed infringing product has not yet been advertised or sold in this state. The intent of defendant Bassett to sell nationally was expressed in a national journal by Bassett's Sales Manager. In view of all factors set forth previously herein, the Court is led to conclude that defendant Malone is subject to suit in this state and that all due process rights have been adequately protected if such suit is allowed in Minnesota.

■ Defendant Malone has argued that venue is improperly laid in Minnesota. Venue is regulated by 28 U.S.C. § 1391(b) and (c) which provide respectively that:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business and such judicial district shall be regarded as the residence of such corporation for venue purposes.

As is set forth in the above discussion, this Court finds that the requirements of the above statutory provisions have been respectfully observed by the plaintiff. The Court has found that at least a part of the cause of action has arisen in Minnesota since the contract was made with a Minnesota resident and was to be completed in Minnesota and because advertising materials were sent into the state with a resident. And, in view of its substantial, long-time sales to Minnesota customers, it is irrefutable that defendant Malone is doing business in this state. Therefore, this Court finds venue to be properly laid in this forum. The Court's ruling, then, on all three of defendant Malone's claims must be unfavorable.

Therefore, IT IS HEREBY ORDERED That the motion of defendant The E.B. Malone Company to dismiss is DENIED. Plaintiff will have ten days from the date of the issuance of this Order to bring its motion for injunctive relief.