The LAND–O–NOD COMPANY,
Appellee,

v.

BASSETT FURNITURE INDUSTRIES,
INCORPORATED, and the E.B. Malone Corporation, Appellants.

No. 82–2437.

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1983.

Decided June 8, 1983.

Bright, Circuit Judge, dissented and filed an opinion.

Hogan & Hartson, David B. Lytle, George H. Mernick, III, Timothy J. Dowling, Washington, D.C., Merchant, Gould, Smith, Edell, Welter & Schmidt, Douglas J. Williams, Minneapolis, Minn., for appellants.

Allen I. Saeks, Stephen J. Davidson, Minneapolis, Minn., for appellee The Land-O-Nod Co.; Leonard, Street & Deinard, Minneapolis, Minn., of counsel.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Bassett Furniture Industries, Inc. (Bassett) and the E.B. Malone Corporation (Malone) appeal from an order of the district court[1] granting the Land-O-Nod Company (Land-O-Nod) a preliminary injunction. The injunction prohibits Bassett and Malone from using Land-O-Nod's registered trademark "Chiropractic" in marketing their mattresses and box springs. We hold that it was not proper for the district court to grant the preliminary injunction because the court had no personal jurisdiction over the defendants.

## I.

Bassett is a Virginia corporation engaged in the business of manufacturing and selling furniture, including mattresses and box springs. Malone, a Florida corporation, is a wholly-owned subsidiary of Bassett and a manufacturer of mattresses and box springs which are sold both under the Malone name and under the Bassett name. Neither Bassett nor Malone is licensed to do business in Minnesota, neither maintains any place of business in Minnesota, neither has any employees headquartered in Minnesota, and neither has any bank accounts in Minnesota. Malone's products are sold under the Bassett name through Levitz Furniture stores, two of which are in Minnesota. Such products have been sold in Minnesota since at least 1972. Malone sales representatives call on Minnesota retailers regarding sales of mattresses and other bedding products. Malone reported $151,871.00 in annual sales in Minnesota for 1981 and $42,637.00 in sales for the first six months of 1982.

Land-O-Nod is a Minnesota corporation which manufactures, sells, and distributes mattresses and box springs. In 1965, the United States Patent and Trademark Office (PTO) issued to Land-O-Nod a registration for the trademark "Chiropractic" which it uses to describe certain of its mattresses and box springs. Land-O-Nod's right to use the word "Chiropractic" as its trademark became incontestable in October 1975 after it filed an Affidavit of Continuous Use with the PTO pursuant to 15 U.S.C. § 1065(3). Land-O-Nod derives a substantial portion of its income through fees from licenses granted to smaller manufacturers throughout the country giving them the right to use the "Chiropractic" trademark.

Land-O-Nod alleges that on or about November 1981, Bassett and Malone began infringing on Land-O-Nod's trademark by using the word "Chiropractic" to describe a particular line of mattresses and box springs which were manufactured by Malone and sold under the Bassett name. Bassett distributes its "Chiropractic" line in states other than Minnesota. Although the district court made no finding as to where the allegedly infringing mattresses were sold outside of Minnesota, there is evidence that the mattresses are being distributed in thirteen states, some of which include Alabama, Florida, Georgia, and Tennessee. Designated Record (D.R.) at 38.

Land-O-Nod brought this action against Bassett and Malone in the United States District Court for the District of Minnesota, alleging trademark infringement under federal law and unfair competition under both state and federal law. Service of process on Bassett and Malone was effected pursuant to the Minnesota "long-arm" statutes. Minn.Stat. §§ 303.13, subd. 1(3) and 543.19, subd. 1. Bassett, by way of its answer, and Malone, by way of a motion to dismiss, contended that the district court lacked personal jurisdiction over them because they were foreign corporations, they were not transacting business in Minnesota, and they had neither committed any tort in Minnesota, nor caused any injury in the state. D.R. at 89, 92.

---

* The Honorable William C. Hanson, Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota.

In ruling on Malone's motion to dismiss, the district court concluded that exercise of personal jurisdiction over Malone was proper because Malone's contacts with Minnesota were sufficient to satisfy constitutional due process concerns. *Land-O-Nod Co. v. Bassett Furniture Industries, Inc., et al.,* 551 F.Supp. 63, 73 (D.Minn.1982). Subsequently the district court preliminarily enjoined both Bassett and Malone from using Land-O-Nod's "Chiropractic" trademark. This interlocutory appeal followed in which defendants allege that the district court abused its discretion in granting the preliminary injunction and erred in concluding that the assertion of personal jurisdiction over defendants comports with due process.

## II.

### A.

█ The jurisdictional basis for this appeal is 28 U.S.C. § 1292(a)(1) as the appeal is from an interlocutory order granting an injunction. Accordingly Land-O-Nod contends that the only issue properly before this court is whether the district court abused its discretion in granting the preliminary injunction and that the lower court's order denying the motion to dismiss for lack of personal jurisdiction is not reviewable at this time. "[B]ut the question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of discretion. The question whether a court has abused its discretion necessarily involves the question whether a court has any discretion to abuse." *Eighth Regional War Labor Board v. Humble Oil & Refining Co.,* 145 F.2d 462, 464 (5th Cir.1944), *cert. denied,* 325 U.S. 883, 65 S.Ct. 1577, 89 L.Ed. 199 (1945). *See 7 Moore's Federal Practice* ¶ 65.03[3], at 65–31 and 65–33 (2d ed. 1982). It is therefore appropriate for this court to review the question of personal jurisdiction at this juncture. *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir.1981).

### B.

█ It is clear that Minnesota's long arm statutes, Minn.Stat. §§ 303.13 and 543.19, authorize the assertion of jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process. *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1269 (8th Cir.1978). We test the limits of due process by applying the familiar minimum contacts standard; nonresident defendants must have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In this circuit, the standard has devolved into a consideration of five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.* 564 F.2d 1211, 1215 (8th Cir.1977); *see Aftanese v. Economy Baler Co.,* 343 F.2d 187, 195–97 (8th Cir.1965). These factors, however, do not provide "a slide rule by which fundamental fairness can be ascertained with mathematical precision." *Toro, supra,* 572 F.2d at 1270. For instance, the last two factors are said to be of secondary importance and not determinative. *Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1210 n. 5 (8th Cir.1977). Ultimately, we must not lose sight of "the central concern of the inquiry" which is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977); *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309, 313 (8th Cir.1982).

Particularly apposite to our current inquiry is *Toro Co. v. Ballas Liquidating Co., supra.* In *Toro,* the Toro Co., a Minnesota corporation, and its wholly-owned wholesale distributor brought an action in Minnesota against International Marketing Associates

(IMA), a Texas corporation. IMA was the exclusive sales agent for Weed Eater products and had chosen to distribute those products in various areas of the country through local sales divisions of Toro. Toro brought an antitrust action against IMA and various other defendants in response to IMA's termination of Toro's New York distributorship. Evidence in support of personal jurisdiction over IMA in Minnesota indicated that IMA conducted activities in Minnesota under its agreement with Weed Eater; IMA's regional sales director called on Minnesota distributors of Weed Eater products to assist them in their sales efforts; and in the year preceding the lawsuit, $400,000 worth of Weed Eater products were sold in the Minnesota market. Based on these facts, the court of appeals upheld the district court's conclusion that personal jurisdiction was lacking because there was no connection between IMA's activities in Minnesota and the litigation concerning termination of Toro's New York distributorship.

### C.

As in *Toro,* in the instant case it is the absence of any connection between Land-O-Nod's cause of action and the sales activity of Bassett and Malone in Minnesota which forces us to conclude that personal jurisdiction is lacking. Although Malone mattresses are sold in Minnesota under the Bassett name, none of the allegedly infringing "Chiropractic" mattresses have been sold in Minnesota.

The district court, while conceding that defendants' business in Minnesota "may not consist of selling the precise allegedly infringing product," *Land-O-Nod, supra,* 551 F.Supp. at 70, concluded that defendants could have anticipated that their activity in Minnesota relating to the marketing and sale of bedding products "might, at some point in time, result in litigation here." *Id.,* 551 F.Supp. at 71. It is true in general terms that a corporation which chooses to avail itself of the protection of a forum state's laws by engaging in business in that state must assume certain risks as well—

such as the risk of litigation. *International Shoe, supra,* 326 U.S. at 319, 66 S.Ct. at 159–60. On the other hand, *Toro* states an important corollary to this principle: "[W]hen the claim sued upon is unrelated to the defendant's forum activities, he may have 'no reason to expect to be haled before [the forum state's] court[s].' *Shaffer v. Heitner, supra,* 433 U.S. 186, 216 [97 S.Ct. 2569, 2586, 53 L.Ed.2d 683]." *Id.,* 572 F.2d at 1271. Accordingly, whether the defendants' forum activities are related to plaintiff's cause of action "bears particular significance to the issue of whether suit can properly be maintained in that state." *Id.*

The district court referred to certain facts which it thought constituted sufficient contacts between Land-O-Nod's cause of action and the forum state. In January 1982 a Windom, Minnesota furniture dealer attended a trade show in Dallas, Texas and ordered two sets of Chiropractic mattresses and box springs from a Bassett representative. The representative provided the dealer with an advertising mat to be used in promoting the sale of the mattresses. This order was never filled and the mattresses were never advertised in Minnesota. In addition, the district court noted that in the May 1982 issue of a national trade journal, "bedding Magazine," Bassett's sales manager expressed an intent to sell the allegedly infringing mattresses nationally.

These facts do not strike us as sufficient to warrant the conclusion that there is a relationship between Land-O-Nod's cause of action and Minnesota. Regardless of the sentiments expressed by Bassett's sales manager in the trade journal, we are aware of no actions by either Bassett or Malone indicating that they are purposefully availing themselves of the privilege of conducting business in the allegedly infringing mattresses in Minnesota. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Indeed, the purposeful conduct by Bassett and Malone, as evidenced by the failure to fill the order placed by the Windom, Minnesota dealer, appears to be aimed at avoiding distribution of the controversial product line in Minneapolis.

The district court suggested that this purposeful conduct may have been motivated by a desire by Bassett and Malone to avoid personal jurisdiction in Minnesota and indicated that it could not "allow this result to be achieved merely because the actual claimed infringing product has not yet been advertised or sold in this state." *Land-O-Nod, supra,* 551 F.Supp. at 73. The court relied on *B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594 (8th Cir.), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1973), to support its conclusion that "defendant's failure to have sold, directly or indirectly, the product which was the subject of the litigation in the forum state because it did not wish the plaintiff to be able to obtain jurisdiction would not enable defendant to defeat jurisdiction." *Land-O-Nod, supra,* 551 F.Supp. at 73.

To the extent that such a principle of law may have been stated in the *B & J* case, we agree with the district court that it was "enunciated in dicta." [2] *Id.* Furthermore, we do not find the dicta to be particularly apposite to the problem presented by the instant case. The court in *B & J* was addressing whether the Minnesota long-arm statute was properly used to effect service of process upon the defendant foreign corporation. *See* n. 2, *supra.* This is a wholly separate question from whether—assuming that service was proper under the state long-arm statute—the exercise of personal jurisdiction comports with due process.[3]

To the extent that the court in *B & J* addressed the issue of due process, it concluded that "the quantity, quality and nature of the defendant's contacts with the jurisdiction are substantial," and therefore due process was satisfied. *B & J, supra,* 483 F.2d at 598. The court did not specifically discuss in its due process analysis the relationship of the cause of action to the forum. *Shaffer v. Heitner* and other Supreme Court cases decided after *B & J* make clear that some nexus between the

---

**2.** The only question addressed by the court in *B & J* was whether the Illinois defendant, by sending letters to Minnesota charging the plaintiff with patent infringement and demanding that it cease manufacturing its product, had transacted business in Minnesota within the meaning of Minn.Stat. § 543.19, subd. 1(b). *B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594, 598 (8th Cir.), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1973) ("[W]e are convinced the plaintiff's cause of action arose from the defendant's transaction of business in Minnesota and, therefore, personal jurisdiction was properly obtained in accordance with M.S.A. § 543.19, subd. 1(b). Our review is accordingly limited, and we express no opinion as to the validity of the other grounds asserted by the plaintiff.")
Having concluded that "the sending of these letters did, in a very real sense, constitute a transaction of business in Minnesota," *id.,* the *B & J* court then made the following observations, which are the dicta upon which the district court in the instant case relied:
The fact that the defendant has, itself, not directly or indirectly sold the [allegedly infringing product] in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here. Rather, the extensive contacts, taken together with the admonition of the Minnesota court in *Hunt* [*v. Nevada State Bank,* 285 Minn. 77, 172 N.W.2d 292 (Minn.1969)], compel the conclusion that service of process was properly made and jurisdiction over the defendant was obtained pursuant to M.S.A. § 543.19 subd. 1(b).
*Id.*

**3.** *Cf. Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309, 312 (8th Cir.1982) (where the court indicated that the inquiry into personal jurisdiction is two-part: whether the facts presented satisfy the statutory requirements of the state long-arm statute; and whether the exercise of personal jurisdiction is consistent with due process). The court must look to a *different source of law* in analyzing each of these two inquiries.
Although the reach of the state long-arm statute is a question of state law and federal courts are required to accept the interpretation given the statute by the state supreme court, the extent to which the reach of the long-arm statute is limited by due process is a question of federal law.
*Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 653 (8th Cir.1982). *Compare B & J Manufacturing, supra,* n. 2 (where the court looked to decisions of the Minnesota Supreme Court to determine whether the defendant was transacting business in the forum state within the meaning of the Minnesota long-arm statute) *with Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267 (8th Cir.1978) (where the court looked to decisions of the United States Supreme Court to determine whether exercise of personal jurisdiction by the forum state comported with due process).

forum and the subject matter of the litigation is required to satisfy due process. *See Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). This is the principle of law enunciated by *Toro, supra,* which expressly relied on *Shaffer.* In turn, our holding expressly relies on *Toro.*

### III.

In sum, the requisite relationship among the defendants, the forum, and the litigation is lacking in this case; it would be fundamentally unfair to permit the prosecution of this lawsuit in Minnesota. As we have observed, there are at least 13 different states in which Bassett and Malone are selling the allegedly infringing mattresses; thus there exist numerous alternative forums in which this action might be maintained.

The order of the district court is vacated and the matter is remanded with instructions to the district court to dismiss the action for lack of personal jurisdiction over the defendants.

BRIGHT, Circuit Judge, dissenting.

I dissent. Malone and Bassett have certain minimum contacts with Minnesota such that maintenance of this suit does not offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940); *see World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). The facts of this case are directly on point with those in *B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594 (8th Cir.), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1973). In *Solar Industries,* the defendant, B & J Manufacturing, had never sold in Minnesota the product over which Solar Industries brought the lawsuit. However, B & J Manufacturing had other substantial business contacts with Minnesota, including sales totalling $107,739.97. We held that

> [t]he fact that the defendant has, itself, not directly or indirectly sold the "tire bead seater" in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here. Rather, the extensive contacts, taken together with the admonition of the Minnesota court in *Hunt v. [Nevada State Bank* [285 Minn. 77], 172 N.W.2d 292 (Minn.1969) ] compel the conclusion that service of process was properly made and jurisdiction over the defendant was obtained pursuant to M.S.A. § 543.19, subd. 1(b).
>
> We are also satisfied that the District Court's assumption of personal jursdiction [sic] over the defendant did not violate the defendant's right to due process. [483 F.2d at 598 (footnote omitted).]

In the case before us, none of the allegedly infringing "chiropractic" mattresses have been sold in Minnesota. However, Bassett and Malone's other contacts are substantial. For example, Malone reported $151,871 in annual sales in Minnesota for 1981 and $42,637 in sales for the first six months of 1982. In addition, the district court found that (1) Malone has been selling bedding products in Minnesota since at least 1972 and Malone sales representatives call on retailers in Minnesota regarding the sales of mattresses and other bedding products, (2) Malone advertised the allegedly infringing mattresses in a national trade magazine circulated in Minnesota, (3) a Bassett representative contracted, at a Dallas, Texas trade show, with a dealer from Windom, Minnesota, to supply that dealer with two of the allegedly infringing mattresses (these beds, however, were never delivered to Minnesota pursuant to the contract), and (4) the Bassett sales representative at the Dallas trade show sent descriptive materials of the allegedly infringing product into Minnesota with the Minnesota dealer.

Moreover, this case is distinguishable from *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267 (8th Cir.1978), in two important respects. First, in *Toro,* the defendant, In-

ternational Marketing Associates, terminated its promotion of Weedeater products in Minnesota eight months before Toro initiated the lawsuit. In our case, Malone continued to sell its products through retailers in Minnesota after the initiation of the lawsuit. Second, in the case before us, the district court held that jurisdiction existed, while in *Toro,* the district court found it lacking.

I therefore conclude that jurisdiction existed in this case, and would affirm the district court on that issue. *See generally* 2 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 4.25[5] (2d ed. 1982).

I would further hold that the district court did not abuse its discretion in granting Land-O-Nod's motion for a preliminary injunction. However, the terms of that injunction are overly-broad.

The purpose of a preliminary injunction is "to preserve the status quo until the merits are determined." *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 & n. 5 (8th Cir.1981). The preliminary injunction, as entered by the district court, prohibits Malone and Bassett from employing the word "chiropractic" in connection with their mattresses outside Florida except where that word is used as part of the formal name of an association of chiropractors who have endorsed or approved the mattresses. Malone alleges, however, that at the time Land-O-Nod filed its complaint in this action, Malone was marketing its "chiropractic" mattresses to approximately seventy-five dealers in twelve states outside Florida. If this contention is correct, the district court's preliminary injunction, as currently constituted, alters rather than preserves the status quo as it existed at the beginning of this case.

Accordingly, I would remand to the district court to determine through which dealers and in which states Malone and Bassett marketed their "chiropractic" mattresses as of the date Land-O-Nod filed its complaint in this case. I would instruct the district court to enter an order prohibiting Malone and Bassett from employing the word "chiropractic" in connection with their mattresses outside those states except where that word is used as part of the formal name of a chiropractors' association which has endorsed the mattresses. Further, I would instruct the district court to enjoin Malone and Bassett from increasing the number of dealers selling "chiropractic" mattresses in those states where Malone and Bassett are already marketing the allegedly infringing mattresses.