**B & J MANUFACTURING COMPANY,**
Appellant,

v.

**SOLAR INDUSTRIES, INC., Appellee.**
No. 73–1022.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1973.

Decided Aug. 1, 1973.

Rehearing and Rehearing En Banc
Denied Sept. 11, 1973.

Edward A. Craig, Detroit, Mich. for appellant.

Robert T. Edell, Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge HEANEY, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Solar Industries, Inc., sought a declaratory judgment under 28 U.S.C. § 2201, that a patent owned by the defendant for a "tire bead seater" was invalid and/or was not infringed by the plaintiff. Service of process on the defendant was obtained pursuant to Minnesota's "long-arm" statutes, M.S.A. §§ 303.13 [1] and

---

* District of Eastern Michigan, sitting by designation.

1. *"303.13 Service of Process*
*"Subdivision 1. Foreign corporation.*
A foreign corporation shall be subject to service of process, as follows:
\*    \*    \*    \*    \*

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Min-

543.19,[2] as permitted by Rule 4(e), Fed. R.Civ.P. The defendant, appearing specially, moved to dismiss the action or, alternatively, to quash the return of service on the ground, *inter alia,* that the court was without personal jurisdiction over the defendant. The District Court ruled that it had personal jurisdiction over the defendant, and certified the issue for an interlocutory appeal to this Court.

The pertinent facts, for the most part, are the following which were found by the trial court: [3]

"1. Plaintiff, Solar Industries, Inc., is a Minnesota corporation having its principal place of business at * * * Osseo, Minnesota 55369.

"2. Defendant, B & J Manufacturing Co., is an Illinois corporation having its principal place of business at Glenwood, Illinois.

"3. On September 15, 1971, process was served on the Minnesota Secretary of State, pursuant to M.S.A. § 303.13, who thereafter mailed a copy of the process to the defendant at Glenwood, Illinois.

"4. On September 27, 1971, personal service was made on Mr. W. E. Jensen, Executive Vice President of defendant, by a United States Marshal for the Northern District of Illinois pursuant to M.S.A. § 543.19.

"5. Defendant is not licensed to do business in Minnesota, and does not maintain a bank account or inventory here, or own, use or possess any real property located here.

"6. Defendant has not and does not maintain any offices or place of business in Minnesota, and does not have any employees in Minnesota. Defendant does have 'sales service personnel' which travel all over the country (presumably including Minnesota) visiting retread shops to make sure defendant's products are performing properly. The last employee to be in Minnesota was such a technical representative who was here in August, 1970.

"7. Defendant has sold its line of Rocket rasps, its line of carbide wheels and tools, and its pollution control equipment in Minnesota. Defendant has made such sales to * * * [six]

nesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. * * * The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the state of Minnesota."

M.S.A. § 303.13.

2. "*543.19 Personal jurisdiction over non-residents*

"Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or his personal representative, in the same manner as if it were

a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

"(a) Owns, uses, or possesses any real or personal property situated in this state, or

"(b) Transacts any business within the state, * * *

* * * * *

"Subd. 2. The service of process on any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the summons upon the defendant outside this state with the same effect as though the summons had been personally served within this state.

"Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

M.S.A. § 543.19.

3. The unpublished opinion and order of the District Court was filed by Judge Miles W. Lord on November 17, 1972.

Minnesota companies in the last two years:

\* \* \* \* \* \*

"In addition to the above, drop shipments were made in the State of Minnesota for the accommodation of buyers outside of Minnesota.

"8. These sales totaled $15,903.09 from July 19, 1969 to December 31, 1969, $50,549.85 in 1970, and $41,287.-03 from January 1, 1971 to November 19, 1971.

"9. The vast majority of the sales were made to N. R. Hansemann Co. which is defendant's distributor in Minnesota.

"10. Defendant advertises in various national publications which are distributed in Minnesota, and Minnesota readers of these publications who make inquiry are sent informative literature by defendant's sales department and advised to contact defendant's local distributor. In some cases, N. R. Hansemann Co. is directly informed of the inquiry. Defendant is certain that some sales have resulted from this process.

"11. Defendant's products sold in Minnesota are sent to defendant's plant in Glenwood, Illinois for any needed repairs.

"12. N. R. Hansemann Co. was provided with certain of defendant's catalogs, imprinted with defendant's name, address and various trademarks and tradenames, to be used in making sales of defendant's products in Minnesota.

"13. N. R. Hansemann Co. carries a complete line of defendant's products except the tire bead seater of the type disclosed by Patent Number 3,552,469, the subject of this suit. The reasons for this are that N. R. Hansemann Co. has not ordered any such tire bead seaters and that defendant does not want plaintiff to be able to establish jurisdiction over defendant in this action.

"14. Defendant purchased the patent in question from Bruce Caulkins, Inc. of Harper Woods, Michigan in July 1971. Prior to such purchase, Bruce Caulkins, Inc. manufactured the tire bead seater in question and distributed it in Minnesota through a distributor. Defendant began to market the tire bead seater on October 4, 1971.

"15. Defendant has instituted a patent infringement action involving Patent Number 3,552,469 in the Northern District of Ohio against one of the plaintiff's distributors who handles plaintiff's tire bead seaters. In addition, defendant has threatened such actions against other distributors of plaintiff's tire bead seater.

"16. Plaintiff and defendant have had no direct business or contractual relationships in Minnesota."

The District Court found personal jurisdiction under both of the cited statutes. Initially, it indicated that the Minnesota Supreme Court has interpreted these statutes to extend the extra-territorial jurisdiction of the Minnesota courts to its maximum reach consistent with the constitutional limitations of due process. Next, it reviewed Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and concluded that the defendant had sufficient contacts with Minnesota in the instant case so that personal jurisdiction could be obtained over it without offending "traditional notions of fair play and substantial justice."

The plaintiff makes alternative arguments for jurisdiction. First, the plaintiff contends that service of process was made consistent with due process and that it is not necessary to tie the grounds

of jurisdiction to specific provisions in the "long-arm" statutes.[4] See, Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 231–232 (D.N.J.1966). Plaintiff maintains this approach is proper because the Minnesota Supreme Court specifically stated that the legislature by enacting the "long-arm" statutes intended "to extend jurisdiction of [the state's] courts to the maximum limits consistent with constitutional limitations." Hunt v. Nevada State Bank, 285 Minn. 77, 172 N.W.2d 292, 304 (1969), cert. denied, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). See also, Ellwein v. Sun-Rise, Inc., 295 Minn. 109, 203 N.W.2d 403 (1972); Mid-Continent Freight L. v. Highway Trailer Indus., 291 Minn. 251, 190 N.W.2d 670, 673 (1971). Defendant, in turn, strenuously argues that the language of statutes must be closely adhered to and that in every instance where the Minnesota court has found personal jurisdiction, one of the statutory elements relating to the acts enumerated in the statute has been found to exist by the court.

Plaintiff, in the alternative, argues that the defendant performed acts in Minnesota which make jurisdiction proper under two of the instances enumerated in M.S.A. § 543.19. First, relying on an unpublished opinion of Judge Larson, the plaintiff contends that the threat of enforcement of a United States patent against a Minnesota resident was the use of personal property within Minnesota and, thus, satisfied M.S.A. § 543.-19, subd. 1(a). See, Imperial Products Inc. v. Zuro, et al., No. 4–70–Civ. 471 (D.Minn. July 1, 1971). The defendant, on the other hand, reasons that the situs of a patent is limited to the residence of its holder—here, Illinois—and that, therefore, there was no ownership, use or possession of the patent in Minnesota. Second, the plaintiff contends that the defendant transacted business in Minnesota by charging the plaintiff with patent infringement and demanding that it cease manufacturing its product. This act, of course, is that enumerated in M.S.A. § 543.19, subd. 1(b). See, n. 2, *supra*. The defendant, however, without further reasoning, maintains that this did not constitute the transaction of business in the forum.

We do not find it necessary here to rule on each of the possible grounds for jurisdiction which are asserted by the

4. The trial court apparently adopted this theory, *albeit sub silentio*, in finding personal jurisdiction in the instant case. Moreover, this same theory involving the Missouri parallel to M.S.A. § 543.19 was recently discussed by Chief Judge Matthes in R. H. Fulton, etc. v. Chicago, Rock Island and Pacific Railroad Company et al., 481 F.2d 326, at 334 n. 5 (8th Cir. 1973):

"A third independent ground for finding the long-arm statute applicable here could be the view taken by the Sixth and Seventh Circuits of similar statutes. See Fisons Ltd. v. United States, 458 F.2d 1241 (7th Cir.), cert. denied, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed. 2d 581 (1972); Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968). In those cases, the courts dealt with the long-arm statutes of Illinois and Tennessee, respectively, which are marketedly similar to the Missouri statute *sub judice*. The courts of both those states had construed their statutes 'to assert jurisdiction over nonresident defendants to the extent permitted by the' Constitution. 458 F.2d at 1250. Consequently, the federal courts held they should not view the statutes as merely erecting a few enumerated, inflexible circumstances in which service could be effected, but as establishing one broad flexible test, to wit: if the service satisfies the Constitution, it satisfies the statute. Since Missouri has likewise construed § 506.500 as intended to reach the constitutional limits, Missouri ex rel. Deere & Co. v. Pinnell, *supra*, we could also adopt this test and avoid 'a pedantic quibbling with the wording of the statute,' 401 F.2d at 378, making it unnecessary to ask whether only § 506.500 (1)(3) applies, whether it applies only to tort actions, whether a Carmack claim sounds in tort, etc. However, considering the answers to those questions given above, we find it unnecessary to take this expansive view of a state statute."

plaintiff. Rather, we are convinced the plaintiff's cause of action arose from the defendant's transaction of business in Minnesota and, therefore, personal jurisdiction was properly obtained in accordance with M.S.A. § 543.19, subd. 1(b). Our review is accordingly limited, and we express no opinion as to the validity of the other grounds asserted by the plaintiff.

■ In view of the fact that the Minnesota Supreme Court has indicated that M.S.A. § 543.19 should be interpreted broadly to "afford maximum protection to [the] state's residents injured by acts of nonresidents," Hunt v. Nevada State Bank, *supra*, 172 N.W.2d at 304, it is proper to employ a liberal construction in determining whether the cause of action has arisen from the transaction of business in Minnesota.

■ It is undisputed that the plaintiff's action arose directly from the fact that through their attorneys, the defendant and the assignor of its patent advised the plaintiff, by letters received in Minnesota, to refrain from infringing on the "tire bead seater" patent and, further, threatened that a suit for infringement would be brought against the plaintiff if it refused to discontinue the manufacture and sale of its competing product. Regardless of the validity of the defendant's patent, there is no doubt but that the requests and threats were designed to reduce competition and thereby improve defendant's marketing and economic position. As such, we are convinced that the sending of these letters did, in a very real sense, constitute a transaction of business in Minnesota. Moreover, we note that the defendant is no stranger to Minnesota, and that it had a number of related contacts in the forum. The defendant advertised its products in national publications which were distributed in Minnesota, and it sold a number of its other products to independent distributors located in the state. It maintained "trouble shooters" who were available to visit the state when necessary to aid users of the firm's products, and the firm also repaired its products, though these had to be shipped to the firm's Illinois office for such service. Furthermore, it is significant that prior to the defendant's acquisition of the patent, its assignor had threatened the plaintiff with an infringement suit; that the assignor had sold the disputed product in Minnesota; and that the assignor and the defendant, as well, had discussed the question of licensing the patent with the plaintiff.

The fact that the defendant has, itself, not directly or indirectly [5] sold the "tire bead seater" in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here. Rather, the extensive contacts, taken together with the admonition of the Minnesota court in *Hunt*, compel the conclusion that service of process was properly made and jurisdiction over the defendant was obtained pursuant to M.S.A. § 543.19, subd. 1(b).

We are also satisfied that the District Court's assumption of personal jurisdiction over the defendant did not violate the defendant's right to due process. See, Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965). It is evident from the trial court's findings of fact that the quantity, quality and nature of the defendant's contacts with the jurisdiction are substantial. The defendant has voluntarily entered into a number of business transactions, including the acquisition of the patent and attempts at enforcement, which it knew would have consequences in the state. Moreover, in view of the defendant's extensive contacts with the forum, we believe that the contacts are sufficiently connected with the cause of action to satisfy due process. See, *Id.*, at 196; 2 J. Moore, Federal Practice ¶ 4.25[5] (2d ed.1970). Furthermore, Minnesota most

---

5. A contrary position is taken in affidavits submitted by the plaintiff which were obtained subsequent to the trial court's decision. However, in view of the time of submission of these affidavits, we shall ignore them on this appeal.

certainly has an interest in providing a forum for a resident who claims that a foreign corporation is attempting to prevent it from manufacturing and marketing its product. This is especially true in the instant case as the defendant has threatened and brought independent actions against a number of the plaintiff's customers and distributors in other states. And finally, while it may be more convenient for the defendant to litigate in Illinois, the convenience of all parties must be considered. No exceptional hardship is suffered by the defendant having to litigate in Minnesota, and we are satisfied that it is in the best interests of all to have the case heard in Minnesota. Thus, we are convinced that the subjection of the defendant to *in personam* jurisdiction comports with due process.

Affirmed.