**DAKOTAH, INCORPORATED, a South Dakota Corporation, Plaintiff,**

v.

**Joseph R. TOMELLERI, Defendant.**

**No. Civ. 97–1050.**

United States District Court,
D. South Dakota,
Northern Division.

Sept. 30, 1998.

Lee A. Schoenbeck, Webster, SD, Laura J. Hein, Minneapolis, MN, for plaintiff.

Brian J. Donahoe, Cutler, Donahoe & Mickelson, Sioux Falls, SD, for defendant.

## ORDER

KORNMANN, District Judge.

## INTRODUCTION

[¶ 1] Dakotah, Incorporated ("Dakotah") is a South Dakota corporation which manufactures various textiles. Joseph Tomelleri ("Tomelleri") is a resident of Kansas. He is a noted illustrator who creates drawings of fish. Tomelleri negotiated by telephone and correspondence with the South Dakota Department of Game, Fish and Parks ("Department") and entered into an agreement whereby he was paid certain sums of money in return for allowing the Department to use certain of Tomelleri's illustrations in brochures which were distributed throughout the state of South Dakota. Among these illustrations were his drawings of a largemouth bass, a smallmouth bass, a rainbow trout, and a brook trout. Tomelleri obtained a federal copyright registration from the United States Copyright Office in 1991 for these four drawings.

[¶ 2] In 1993, Tomelleri granted a license to Stranger Creek, Inc., a Kansas corporation whose stockholder-owner is Thomas Fliger, to use Tomelleri's fish illustrations on "decorated textiles (t-shirts, sweatshirts, etc.)" which were sold worldwide. As compensation, Stranger Creek agreed to pay Tomelleri "royalties of 5% (percent) per shirt sold." The agreement provides that Tomelleri shall be the owner of the copyright on the designs but that Tomelleri and Stranger Creek may sue jointly in the event of an infringement.

[¶ 3] On July 14, 1997, the president of Dakotah received a cease and desist letter from Tomelleri's Kansas attorney, which alleged that Dakotah was selling decorative pillows that infringed copyrights owned by Tomelleri and licensed to Stranger Creek. The letter also stated that Dakotah was subject to injunctive relief, damages and criminal prosecution. This Court must be very careful to treat all attorneys with courtesy and not launch missiles. The Court, however, finds a portion of the letter from the Kansas attorney to be frankly disturbing. No person, especially an attorney, should be even mentioning a possible criminal prosecution in an attempt to collect money in a civil dispute. Extortion is theft by threat if a person obtains property of another by threatening to accuse anyone of a criminal offense. This is not only the common law but is a statute in South Dakota. *See* S.D.C.L. 22–30A–4(2). It is also a specific grounds for disbarment in South Dakota.

[¶4] The Dakotah pillows at issue depict various species of fish, including largemouth bass, smallmouth bass, rainbow trout and brook trout. On July 24, 1997, Kansas counsel for Tomelleri spoke with the president of Dakota telephonically. Subsequently, several letters and telephone calls were exchanged between counsel for Dakotah and Kansas counsel for Tomelleri.

[¶ 5] On August 15, 1997, Dakotah requested a settlement proposal from Tomelleri. Unbeknown to Tomelleri, Dakotah had filed a declaratory judgment action against Tomelleri and Stranger Creek on August 12, 1997. That matter was assigned civil number 97–1032 and the clerk of this Court issued a summons. That complaint sought a declaration of invalidity, non-infringement and unenforceability of a copyright and registration in fish illustrations owned by Tomelleri and licensed to Stranger Creek. The summons and complaint in that matter were never served.

[¶ 6] Tomelleri demanded sales information from Dakotah related to the sale of the allegedly infringing pillows. On September 26, 1997, information was provided to Tomelleri that the profits received from the allegedly infringing pillows were approximately $30,000. On November 6, 1997, Tomelleri sent Dakotah a letter demanding $1,000,000

to settle the matter and threatening an infringement action in the District of Kansas if the matter could not be settled. Dakotah did not respond to the settlement demand and on December 9, 1997, Tomelleri inquired why Dakotah had not responded and reiterated Tomelleri's intent to file suit if the matter could not be settled. On December 16, 1997, Dakotah sent Tomelleri a letter requesting a two week extension to respond. All negotiations up to this point in time were handled by Dakotah's South Dakota counsel.

[¶ 7] On December 23, 1997, Dakota, through Minneapolis counsel as well as South Dakota counsel, filed the present declaratory judgment action against Tomelleri and Thomas Fleeger (sic), d/b/a Stranger Creek ("Fliger") and faxed a copy to counsel for Tomelleri and Stranger Creek.[1] That matter was assigned civil number 97–1050. The complaint in 97–1050 seeks a declaration that Dakotah's goods do not infringe any valid copyright belonging to Tomelleri as to his fish illustrations. The next day[2], Tomelleri and Stranger Creek filed their own action in the District of Kansas seeking an injunction and damages.

[¶ 8] Tomelleri and Fliger filed a motion to dismiss this action for lack of jurisdiction on January 26, 1998, Doc. 4. Defendants alternatively request dismissal under 28 U.S.C. § 2201 on the grounds that there is a copyright infringement action pending in the District of Kansas entitled *Stranger Creek and Tomelleri v. Dakotah*, Case No. 97–2669–EEO, —— F.Supp.2d ——, 1998 WL 760144 (D.Kan.1998), the claim being that the Kansas case is the proper forum for resolution of the parties' dispute.

[¶ 9] On March 26, 1998, Dakotah sent for filing a notice of dismissal of Fliger, d/b/a Stranger Creek. The document had the case caption, i.e. the correct parties by name, in CIV 97–1050 but was prepared by Dakotah with a designation of CIV 97–1032. That document was, of course, filed in CIV 97–1032, Doc. 3. Clerks rely on counsel to use the correct file number. Fliger was not a

named defendant in CIV 97–1032. Thus, Fliger remained a named party in CIV 97–1050.

[¶ 10] On April 14, 1998, defendant's attorney's office called to inquire whether the Court had received an April 3, 1998, letter from the defendant's attorney, since it appeared that the original was in the law firm's file. No such letter had been received by the Court but was subsequently faxed to the Court. The letter agues the merits of the motion to dismiss and should have been in the nature of a brief, not a letter addressed to the Court personally. It was sent in violation of written standard operating procedures of this court and in violation of D.S.D. LR 4.1(B) and (C). The letter was copied to Laura J. Hein, Dakotah's pro hac vice counsel. The letter was not filed. Dakotah filed a response to this letter, referring to the letter as an unauthorized supplemental brief, requesting the opportunity to file a response to that letter. Doc. 13. The response from Dakotah shows the caption name from CIV 97–1050 but the case number from CIV 97–1032. The response (Doc. 13) for some unknown reason was filed in CIV 97–1050.

[¶ 11] This same attorney sent another letter to the Court received today. This letter is also an unauthorized brief, sent in violation of the local rules. The letter attempts to argue the merits of the pending motions; although no attempt was made to file the letter with the Clerk. It will not be considered or filed.

[¶ 12] On July 1, 1998, the Honorable Earl E. O'Connor, United States District Judge for the District of Kansas, entered an order in CIV. No. 97–2669–EEO, deferring ruling on Dakotah's motion to dismiss in that matter, pending disposition of the motion to dismiss in this action. Dakotah provided the Court a copy of that order on July 7, 1998. On July 8, 1998, Tomelleri requested the Court to take judicial notice of that order, Doc. 15. Tomelleri also moved for oral argument, contending Dakotah dismissed Fliger

---

1. Defendants correctly note that plaintiff and plaintiff's attorneys never mentioned to defendants the suit filed in August and failed to disclose that matter on the civil cover sheet.

2. Defendants contend that defendants obtained service in the Kansas lawsuit more than a week prior to plaintiff obtaining service in the South Dakota lawsuit. In federal court, a lawsuit is commenced by filing, not by service. Fed. R.Civ.P. 3.

and Tomelleri is therefore the only remaining defendant, Doc. 14. This is incorrect, since, as set forth above, no dismissal then had been filed in CIV 97–1050.

[¶ 13] On July 23, 1998, Dakotah filed a notice of dismissal of CIV 97–1032 pursuant to Fed.R.Civ.P. 41(a)(1). Although that notice improperly designated the defendants, it was correctly filed in CIV 97–1032 and that matter is now no longer pending.

[¶ 14] Also on July 23, plaintiff finally filed a notice of dismissal as to defendant Fliger, d/b/a Stranger Creek, in CIV 97–1050. Now pending is the declaratory judgment action herein against Tomelleri only.

## I. Jurisdiction

[¶ 15] "[T]he facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion." *Radaszewski by Radaszewski v. Telecom Corp.,* 981 F.2d 305, 310 (8th Cir. 1992). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991); *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2nd Cir.1997). "While it is true that the plaintiff bears the ultimate burden of proof on this issue, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Id.* "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Id.*

> This is the same standard as the one we apply on motions for summary judgment under Rule 56. We look at the facts in the light most favorable to the party opposing the motion, give him the benefit of all reasonable inferences, and grant the motion only if there is no genuine issue as to any material fact, so that the moving party is entitled to judgment as a matter of law. So here, though the motion is captioned under Rule 12(b)(2) rather than under Rule 56, the analytical process is the same as that used on a motion for summary judgment. We look at the facts relevant to the issue of jurisdiction in the light most favorable to [the plaintiff], give him the benefit of all reasonable inferences from these facts, and deny the motion to dismiss if the record, viewed in this way, raises any genuine issue of fact material to the issue of jurisdiction.

*Radaszewski by Radaszewski v. Telecom Corp.,* 981 F.2d 305, 310 (8th Cir.1992).

[¶ 16] "We approach our analysis of personal jurisdiction on two levels, first examining whether the exercise of jurisdiction is proper under the forum state's long-arm statute. If the activities of the non-resident defendant satisfy the statute's requirements, we then address whether the exercise of personal jurisdiction comports with due process." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d at 1387–1388.

[¶ 17] South Dakota's long-arm statute, S.D.C.L. § 15–7–2, provides, inter alia:

> Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts: (1) The transaction of any business within the state;
>
> \*        \*        \*        \*        ,\*        \*
>
> (11) Commencing or participating in negotiations, mediation, arbitration or litigation involving subject matter located in whole or in part within the state;

Tomelleri concedes that the South Dakota long arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause of the United States Constitution. This Court must therefore address only the question whether the exercise of personal jurisdiction in this case satisfies due process. *Dakota Industries v. Ever Best Ltd.,* 28 F.3d 910, 914 (8th Cir.1994).

[¶ 18] The United States Supreme Court has held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted).

[¶ 19] The Eighth Circuit applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction:

(1) the nature and quality of the contacts with the forum state;

(2) the quantity of contacts with the forum;

(3) the relation of the cause of action to these contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) the convenience of the parties.

*Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 522–23 (8th Cir.1996). "The first three factors are of primary importance, and the last two are 'secondary factors.'" *Id.* 89 F.3d at 523.

[¶ 20] This action arose directly from the fact that Tomelleri and the assignor of his copyright, Fliger, through their attorney, sent to Dakota cease and desist letters threatening patent litigation, inferring criminal prosecution and later demanding payment of $1,000,000 for allegedly infringing on Tomelleri's copyright. This case is factually similar in some aspects to *B & J Manufacturing Co. v. Solar Industries, Inc.,* 483 F.2d 594 (8th Cir.1973). In *B & J,* Solar Industries, a Minnesota corporation, sued B & J, an Illinois corporation, in U.S. District Court for the District of Minnesota, seeking a declaratory judgment that the patent owned by B & J for a "tire bead seater" was invalid or, alternatively, was not infringed by Solar Industries. *Id.* 483 F.2d at 594. B & J moved to dismiss on the ground that the court was without personal jurisdiction over B & J. The Eighth Circuit held that jurisdiction was obtained under Minnesota's long arm statute. The Eighth Circuit held:

> It is undisputed that the plaintiff's action arose directly from the fact that through their attorneys, the defendant and the assignor of its patent advised the plaintiff, by letters received in Minnesota, to refrain from infringing on the "tire bead seater" patent and, further, threatened that a suit for infringement would be brought against the plaintiff if it refused to discontinue the manufacture and sale of its competing product. Regardless of the validity of the defendant's patent, there is no doubt but that the requests and threats were designed to reduce competition and thereby improve defendant's marketing and economic position. As such, we are convinced that the sending of these letters did, in a very real sense, constitute a transaction of business in Minnesota. Moreover, we note that the defendant is no stranger to Minnesota, and that it had a number of related contacts in the forum. The defendant advertised its products in national publications which were distributed in Minnesota, and it sold a number of its other products to independent distributors located in the state. It maintained "trouble shooters" who were available to visit the state when necessary to aid users of the firm's products, and the firm also repaired its products, though these had to be shipped to the firm's Illinois office for such service. Furthermore, it is significant that prior to the defendant's acquisition of the patent, its assignor had threatened the plaintiff with an infringement suit; that the assignor had sold the disputed product in Minnesota; and that the assignor and the defendant, as well, had discussed the question of licensing the patent with the plaintiff.

*B & J Manufacturing v. Solar Industries,* 483 F.2d at 598. The Eighth Circuit held that jurisdiction was obtained over the defendant pursuant to the long-arm statute. *Id.* The Eighth Circuit also held that the district court's assumption of jurisdiction over B & J did not violate due process because the "quantity, quality and nature of the defendant's contacts with the jurisdiction are sub-

stantial." *Id.* The Eighth Circuit held that the defendant's contacts with Minnesota were sufficiently connected with the cause of action to satisfy due process. *Id.* Finally, the Eighth Circuit noted that "Minnesota certainly has an interest in providing a forum for a resident who claims that a foreign corporation is attempting to prevent it from manufacturing and marketing its product." *Id.* 483 F.2d at 598–99.

[¶ 21] The Eighth Circuit clarified its holding in *B & J* in *Land–O–Nod Co. v. Bassett Furniture Industries, Inc.,* 708 F.2d 1338 (8th Cir.1983). In *Land–O–Nod,* the plaintiff, a Minnesota corporation, brought a patent infringement action in U.S. District Court in Minnesota against a Virginia corporation and its wholly owned Florida subsidiary. The District Court held that jurisdiction existed because, although the defendants did not sell the allegedly infringing article in Minnesota, they sold other products in Minnesota. *Id.* 708 F.2d at 1341. The Eighth Circuit clarified its holding in *B & J* by noting that the primary question there was whether the defendant transacted business within the meaning of the long arm statute in Minnesota by sending a cease and desist demand to the plaintiff. *B & J* did not, according to *Land–O–Nod,* specifically discuss in its due process analysis the relationship of the cause of action to the forum. *Land–O–Nod,* 708 F.2d at 1342. Finding the "relationship among the defendants, the forum, and the litigation is lacking," the Eighth Circuit held that "it is the absence of any connection between Land–O–Nod's cause of action and the sales activity of [defendants] in Minnesota which forces us to conclude that personal jurisdiction is lacking." *Id.* 708 F.2d at 1341.

[¶ 22] The facts present here, to some extent, and in *B & J,* to some extent, were also present in *Akro Corp. v. Luker,* 45 F.3d 1541 (Fed.Cir.1995). In *Akro,* the circuit court held that the district court had personal jurisdiction over a declaratory judgment action filed by an alleged patent infringer, Akro, seeking determination of noninfringement or invalidity and unenforceability of a vehicle floor mat patent owned by Luker, an out-of-state patentee. The Federal Circuit held that Luker purposefully directed its activities concerning its patent towards resi-

dents of Ohio by addressing warning letters to Akro, an Ohio corporation, and by entering into an exclusive licensing agreement regarding the patent with Akro's competitor. *Akro,* at 1546–47. The Federal Circuit held that "it could scarcely be more clear that Luker purposefully directed activities at residents of Ohio within the meaning of the due process inquiry mandated by Burger King and International Shoe." *Id.* 45 F.3d at 1546. Further, "those activities are related to Akro's cause of action." *Id.* 45 F.3d at 1549.

■ [¶ 23] Tomelleri concedes that jurisdiction exists under the South Dakota long arm statute. Tomelleri contends, however, that the exercise of personal jurisdiction over him does not satisfy due process. *B & J, Land–O–Nod,* and *Akro* would compel the conclusion that jurisdiction exists here. Tomelleri did have substantial contacts with Dakotah in an attempt to force Dakotah to cease manufacturing certain textiles. He also earlier entered into a license agreement in South Dakota for the very same fish illustrations he contends Dakotah is illegally using. Tomelleri for some reason did not disclose this contract with the state government in South Dakota when he filed the papers in support of his motion to dismiss. Although "courts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes," *Digi–Tel Holdings v. Proteq Telecommunications,* 89 F.3d at 524, and telephone and letter contacts "are not ordinarily sufficient by themselves to support the exercise of personal jurisdiction," *Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir.1997), Tomelleri's contacts with Dakotah were not ordinary. Tomelleri sent letters with the intent of forcing Dakotah to discontinue manufacturing and selling certain of its products. Tomelleri not only threatened litigation in the District of Kansas, but implied that Dakotah and others, including retailers of Dakotah products and perhaps George White (then president of Dakotah) personally were subject to criminal prosecutions if they did not comply with Tomelleri's demands. Here, the "relationship among the defendants, the forum, and the litigation" is substantial. Although there is no evidence that Tomelleri ever entered the state of South Dakota, "the minimum contacts required by

due process need not include any physical presence in the State." *Dakota Industries v. Ever Best Ltd.*, 28 F.3d at 915, *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

[¶ 24] Tomelleri cites *Bell Paper Box, Inc. v. Trans Western Polymers*, 53 F.3d 920, 922–23 (8th Cir.1995), for the proposition that due process is not met where there is no more than telephonic, mail and facsimile communication between defendant and the plaintiff in the forum state. *Bell Paper* is distinguishable because there is more than communication between Tomelleri and Dakotah. Tomelleri also entered into a license agreement with the Department of Game, Fish and Parks, an agency of state government, for the same fish illustrations he alleges Dakotah infringed. Further, as discussed above, the letter contacts with Dakotah were not ordinary contacts but constituted a purposeful attempt to coerce Dakotah to discontinue manufacturing and selling one of its product lines being manufactured in South Dakota.

[¶ 25] The Court finds that minimum contacts exist and that those contacts relate to the cause of action such that jurisdiction comports with due process. Further, this District has an interest in providing a forum for the plaintiff resident within which to determine whether it is entitled to manufacture and produce the items Tomelleri seeks to bar. Finally, the convenience of the parties favors Dakotah. State government officials may be witnesses. Persons involved in the design and manufacture of the products all reside in South Dakota. Personal jurisdiction is proper over Tomelleri.

## II. Venue

[¶ 26] Tomelleri urges this Court to choose not to exercise its jurisdiction over Dakotah's declaratory judgment action in light of the parallel action filed by Tomelleri in the District of Kansas. Tomelleri contends Dakotah demonstrated bad faith in misrepresenting its desire to settle this dispute while it secretly filed its declaratory judgment actions in the District of South Dakota. This Court is not particularly impressed with the actions of plaintiff in filing an action in federal court, having the clerk issue a summons and then "sitting on" the matter, making no attempt to accomplish service of process. The filing of "duplicate lawsuits" has also cluttered up the record and caused additional work for judicial personnel. Even counsel for the plaintiff were apparently unable to distinguish between the two civil suit filing numbers. This practice should not be repeated in the Northern or Central Divisions of the District of South Dakota.

[¶ 27] This Court also has some understanding of the indignation, if you will, of Tomelleri and his attorneys. They were attempting, at least initially, to negotiate a possible settlement and, as is the obligation of any attorney, to avoid, if at all possible, embroiling clients in a complicated and likely protracted lawsuit. Dakotah and their attorney were responding and acting as though a settlement was at least a possibility. The then sole attorney acting for Dakotah is a general practice lawyer. There are few, if any, lawyers practicing in South Dakota with any significant experience in intellectual property law. This Court knows of one such attorney, practicing in Sioux Falls. Thus, not until Dakotah could consult with a legal specialist could Dakotah engage in any meaningful analysis of the claims of Tomelleri. Once Dakotah concluded, rightly or wrongly, that it had no obligation to Tomelleri or Stranger Creek, it would make sense to file the declaratory judgment action in South Dakota, knowing that once it communicated its unwillingness to engage in further negotiations, Dakotah would be sued in Kansas. The only thing worse than being sued is being sued away from home. What was done by Dakotah's attorneys was clearly not illegal or unethical and does not constitute "bad faith." Any trial lawyer knows that there is always the possibility of a "race to the courthouse", especially when one side concludes that negotiations are going absolutely nowhere. A party is not permitted to even bring a declaratory judgment action in the absence of "a case of actual controversy within its jurisdiction ***." 28 U.S.C. § 2291(a). There clearly was an actual controversy and Dakotah acted to seek to have it resolved. When an actual controversy exists and cannot be resolved by a settlement, someone is going to walk, if not run, to the courthouse.

A party threatening a suit and demanding very high damages cannot thus block the adverse party from seeking to promptly resolve the matter in court in the adverse party's home forum.

■] [¶ 28] 28 U.S.C. § 2201 empowers this Court to render a declaratory judgment as to the rights and other legal relations of parties to an action. The Declaratory Judgment Act does not, of course, confer jurisdiction. Dakotah alleges jurisdiction under 28 U.S.C. § 1331, federal question, and 28 U.S.C. § 1338. Section 1338(a) gives the Court jurisdiction over any claim arising under the copyright laws of the United States. An action for declaratory judgment as to the validity and infringement of a copyright is such a claim. Venue in a declaratory judgment action for copyright invalidity and non-infringement is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c). *Emerson Elec. Co. v. Black and Decker Mfg. Co.*, 606 F.2d 234, 238 (8th Cir.1979). Section 1391(b) provides, inter alia:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Based upon the record before the Court, the alleged infringing articles were designed and manufactured in the District of South Dakota. The copyrights themselves are on record with the United States copyright office. Venue is proper in the District of South Dakota. This is not to say that venue could not also be proper in another jurisdiction.

■ [¶ 29] The first-filed rule provides that, in a case of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir.1985). "The purpose of this rule is to promote efficient use of judicial resources. The rule is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." *Id.* " 'In the absence of compelling circumstances,' the first-filed rule should apply." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005, (8th Cir.1993) (quoting *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990)).

[¶ 30] The Eighth Circuit in *Northwest Airlines v. American Airlines, supra,* found two factors that "send up red flags that there may be compelling circumstances." 989 F.2d at 1007.

> First, Northwest was on notice that American was at least considering filing suit against Northwest. American's letter, however, gave no indication that a lawsuit was imminent, or that American was doing anything more than blowing smoke about a potential lawsuit. The contents of Northwest's response, three weeks later, indicated that Northwest was continuing to review the law and did not suggest that Northwest had acquiesced to American's position. In fact, Northwest's letter made it clear that Northwest believed American's legal analysis of the merits of a possible lawsuit by American was flawed, and did nothing to make American believe the matter was resolved. Further, it was another six weeks before Northwest filed its declaratory judgment action, and yet another six weeks after that before American filed its lawsuit in Texas, from which one might infer that American's lawsuit was not truly contemplated until after Northwest had filed its action.

> The fact that Northwest's action was for declaratory judgment also merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief.

*Northwest Airlines,* 989 F.2d at 1007. The Eighth Circuit noted that these two factors made that case a close call but concluded the District Court considered them both carefully in finding that Northwest had not "acted in bad faith nor raced to the courthouse to preempt a suit by American in Texas." *Id.*

[¶ 31] The present case differs from the narrow issue presented and decided in the

*Northwest Airlines* case. There, the sole issue was whether the District Court in the District of Minnesota abused its discretion in enjoining American Airlines from proceeding with its lawsuit in federal court in Texas. Here, there is no request to enjoin Tomelleri from proceeding in the District of Kansas and that decision is in the hands of Judge Earl O'Connor. He has, as previously discussed herein, deferred ruling on Dakotah's motion to dismiss. There is, however, no final ruling by Judge O'Connor and this Court, although there is jurisdiction to do so, has no intention of enjoining Tomelleri from proceeding in Kansas and, in effect, interfering with Judge O'Connor's discretion.

[¶ 32] The facts of this case also create a "close call." The Court takes note that the first letter from Tomelleri's lawyer to Dakotah made certain demands "prior to institution of suit." Following receipt of that letter by Dakotah's attorney, Dakotah requested documents from Tomelleri to establish his claim. On August 12, 1997, Dakotah filed a declaratory judgment action in federal court in South Dakota, CIV 97–1032. On August 15, 1997, Dakotah sent Tomelleri a letter denying it was infringing Tomelleri's copyright but stated that "in light of your threat we have suspended all sales of the remaining products that you have questioned—until such time as this lawsuit is resolved." Dakotah knew at that time that a lawsuit had been filed and made reference to "this lawsuit." Dakotah suggested by way of negotiation that it would like to enter into a licensing agreement with Tomelleri and suggested any claimed damages be resolved on the basis of reasonable licensing fees. These facts may suggest that the suit filed in December was not filed in bad faith or in a race to the courthouse. The facts certainly do not compel a conclusion that there was bad faith of some kind. Suit was contemplated by Dakotah prior to any suggestion by Dakotah of possible liability. On November 6, 1997, Tomelleri sent a demand letter to Dakotah wherein he stated he was willing, "prior to filing suit in the United Stated (sic) District Court for the District of Kansas, to settle this matter for $1,000,000." Over a month passed and Tomelleri received no response. Tomelleri sent another letter on December 9, 1997. No response was received until De-

cember 16, 1997. At that time, Dakotah's attorney asked for a two week extension "to get some authority to address this with you." One week later Dakotah's Minneapolis counsel sent by facsimile a copy of the instant complaint to Tomelleri's counsel. Certainly Tomelleri could not have expected that its November 6, 1997, $1,000,000.00 demand would be met favorably when Dakota's letters suggested damages in the few thousands. Such a high demand, common sense tells us, serves only to end negotiations and that is exactly what happened. Further, Dakotah, like Northwest Airlines, had a legitimate business reason for seeking a prompt resolution of the parties' dispute. Dakotah had voluntarily ceased manufacturing the alleged infringing pillows until the dispute was settled. The information submitted to Tomelleri reported that profits had been realized on that line of approximately $30,000. Clearly, Dakotah had a legitimate reason for filing this action, having no intention of paying $1,000,000 for items which generated profits of only $30,000.

[¶ 33] The Court is mindful that "declaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forum," *The Prudential Insurance Company of America v. Doe*, 140 F.3d 785, 790 (8th Cir.1998), and that declaratory judgments should not be used to discourage settlements. Courts have dismissed first filed declaratory judgment actions when settlement negotiations were in progress and where the declaratory judgment plaintiff misled the defendant into believing their dispute could be resolved so that the declaratory judgment plaintiff could win the race to the courthouse. *See Tempco Elec. Heater Corp. v. Omega Engineering*, 819 F.2d 746 (7th Cir.1987), and *N.S.I. Corp. v. Showco, Inc.*, 843 F.Supp. 642 (D.Or.1994). However, the facts in this case more closely resemble the facts in *Kmart Corp. v. Key Industries, Inc.*, 877 F.Supp. 1048 (E.D.Mich.1994), and *Agridyne Technologies, Inc. v. W.R. Grace & Co.*, 863 F.Supp. 1522 (D.Utah 1994). In both of those cases, it was clear to the alleged infringer that the defendant would take nothing less than total capitulation of the infringer's business as settlement and that further negotiations were pointless. Thus, the

courts ruled that it was not improper to file a declaratory judgment action despite having been threatened with imminent suit for infringement. *Kmart,* 877 F.Supp. at 1054, *Agridyne,* 863 F.Supp. at 1527.

[¶ 34] Dakotah was clearly justified in believing that further negotiations were fruitless. Refusing to apply the first filed rule in this case would not promote the public policy of negotiation and settlement of disputes. Nor is the fact that a copyright infringement action appeared to be imminent something that is outcome determinative here. There is no evidence that Dakotah's choice of forum was motivated by a desire for a forum with the more favorable law. The only inference here is that Dakotah desired to litigate in the forum which was most convenient to it.

[¶ 35] The Court considers additional factors in exercising its discretion in allowing the first filed declaratory judgment action in this District to proceed. South Dakota, as already noted, is the most convenient venue for the witnesses in determining whether Dakotah's pillows infringe any valid copyright owned by Tomelleri. Both parties will clearly be personally inconvenienced by having to litigate in the other party's forum. The balance tips in favor of Dakotah. Also, Tomelleri has not shown that jurisdiction could be obtained over Dakotah in Kansas. Tomelleri alleged in its Kansas complaint that "upon information and belief, Dakotah transacts business" in Kansas. 28 U.S.C. § 1400(a) provides that venue is appropriate in the district where the defendant may be found. "In construing this section, courts have generally held that a defendant may be 'found' in any district in which personal jurisdiction may be obtained over the defendant." *Thomas Jackson Pub., Inc. v. Buckner,* 625 F.Supp. 1044, 1048 (D.Neb.1985). Thus, venue in Kansas is proper if the District of Kansas has personal jurisdiction over Dakotah pursuant to Kansas' long-arm statute. *Id.* Kansas' long arm statute, K.S.A. § 60-308(b) is substantially similar to South Dakota's. Presumably, as discussed in Section I above, Dakotah must be found to have sold the alleged infringing pillows in Kansas in order for the District of Kansas to obtain personal jurisdiction over Dakotah. There is no evidence in the record to support the assertion of jurisdiction in Kansas.

### III. Other Issues

[¶ 36] Tomelleri's letter of April 3, 1998, is not properly before the court, being in violation of D.S.D. LR 7.2 and 4.1(B) and (C) as well as the scheduling order herein. In any event, Tomelleri's claim therein does not defeat jurisdiction. Dakotah seeks a declaration that Dakotah's goods do not infringe on any valid copyright owned by Tomelleri. Stranger Creek is not a necessary party to such a determination. If it were, no declaratory judgment action concerning patents or copyrights could proceed without also naming every individual or entity previously granted a license to use the patent or copyright. That is clearly not the law. Dakotah also seeks an injunction enjoining suit by Tomelleri and Stranger Creek. To the extent Dakotah's complaint seeks such relief against Stranger Creek, that claim has been abandoned by the dismissal of Stranger Creek. Neither Fed.R.Civ.P. 17 nor Fed. R.Civ.P. 19 would require the presence of Stranger Creek as a party.

[¶ 37] Tomelleri's request for judicial notice is proper and will be granted.

[¶ 38] Pursuant to D.S.D. LR 7.1, the motion to dismiss will be decided without oral argument. *Jetton v. McDonnell Douglas Corp.,* 121 F.3d 423, 426–427 (8th Cir.1997). Tomelleri's request for oral argument has been considered and is denied.

### ORDER

[¶ 39] Based upon the foregoing,

[¶ 40] IT IS ORDERED:

1. Defendant's motion to dismiss, Doc. 4, is denied.

2. Defendant's request for oral argument, Doc. 14, is denied.

3. Defendant's request for judicial notice, Doc. 15, is granted.

4. Defendant's unauthorized letters to the Court are stricken.